UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID LASHUAY,

                Plaintiff,                        Case No. 17-cv-13581

v.                                                       Honorable Thomas L. Ludington

AIMEE DELILNE, et al,

                Defendants.

_____/

**ORDER DENYING WITHOUT PREJUDICE MOTION FOR EXPEDITED DISCOVERY, GRANTING MOTION TO STRIKE SECOND AMENDED COMPLAINT, STRIKING SECOND AMENDED COMPLAINT, AND SETTING PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT FOR HEARING**

On November 1, 2017, Plaintiff David Lashuay filed a complaint against a variety of medical staff and medical providers alleging that they were deliberately indifferent to his medical needs while he was incarcerated by the Michigan Department of Corrections. ECF No. 1. On November 10, 2017, and before any Defendants were served, Lashuay filed an amended complaint which made minor factual clarifications and corrected several clerical errors. ECF No. 4. On the same day, Lashuay filed two ex parte motions for leave to commence limited discovery immediately.[1] ECF Nos. 5, 6. In the request, Lashuay explains that his prefiling investigation did not reveal the identity of two potential Defendants (named as John Does in the complaint). Lashuay seeks leave to take a deposition and issues subpoenas to identify the proper parties.

Over the next several weeks, most named Defendants were served. On December 8, 2017, the served Defendants filed a motion to dismiss the claims against them. ECF No. 26. That motion is currently set for hearing on February 28, 2018. ECF No. 32. On December 27, 2017, Plaintiff

---

[1] Because the two motions are materially identical, the first motion, ECF No. 5, will be denied as moot.

filed a second amended complaint. ECF No. 35. That second amended complaint does not name new Defendants, but does amend the claims being advanced. In its reply brief in support of its motion to dismiss, Defendants noted that the second amended complaint had been improperly filed because Lashuay had already amended once as by right. On January 3, 2018, Lashuay filed a motion for leave to file its second amended complaint. ECF No. 39. The next day, the served Defendants filed a motion to strike the previously filed second amended complaint. ECF No. 40.

In his motion for leave to file a second amended complaint, Lashuay acknowledges that Federal Rule of Civil Procedure 15(a)(1) only permits one amendment as of right. By making that admission (and, indeed, filing the motion for leave to file a second amended complaint), Lashuay has conceded that the second amended complaint was improperly filed. The second amended complaint, ECF No. 35, will be stricken, and Lashuay's motion for leave to file a second amended complaint will be scheduled for hearing.[2] If Lashuay's motion is granted, he will be directed to refile the second amended complaint. Additionally, and for the reasons provided below, Lashuay's motion for expedited discovery will be denied.

I.

A.

Lashuay's amended complaint alleges that, on July 9, 2014, Lashuay suffered third degree burns on 49% of his body because of an explosion in Otsego County, Michigan. Am. Compl. at 10, ECF No. 4. Lashuay was treated at the Hurley Hospital Burn Unit in Flint Michigan for many weeks. *Id.* On October 16, 2014, Lashuay was released from Hurley Hospital and into the custody of the Michigan Department of Corrections. *Id.* He remained in MDOC custody until September 1, 2016, when he was released on parole. *Id.*

---

[2] In their motion to strike the second amended complaint, Defendants allege that Lashuay agreed to withdraw the second amended complaint. *See* Mot. Strike at 3, ECF No. 40.

Lashuay's claims arise out of the MDOC's alleged deliberate indifference to his medical needs upon his release from Hurley Hospital. He contends that, when released into MDOC custody, "Hurley hospital recommended additional skin grafts and surgery to release contractures caused by the burns, with a re-visit at their Burn Unit in 2 weeks to evaluate for planned surgeries." *Id.* at 10–11.

According to Lashuay, MDOC medical personnel "assured the Hurley Hospital medical staff that all of Plaintiff's medical needs would be met," but failed to fulfill that promise. *Id.* at 11. Specifically, Lashuay contends that, "[u]pon arrival at [MDOC's Dwayne Waters Hospital (DWH)], Plaintiff had open wounds requiring daily dressing changes and application of medications." *Id.* Despite his condition, he was "placed in isolation for 30 days." *Id.* He alleges that, during his incarceration, he received "minimal or no wound care." *Id.* Rather, Lashuay was "required to attend to his daily wound-care needs, dressing changes and medication application with no or minimal assistance from healthcare staff." *Id.* He alleges that he was "frequently not provided with adequate supplies to change his wound dressing and had to resort to tearing up garbage bags to cover some of the open wounds." *Id.* at 11–12.

Lashuay alleges that "[t]here are numerous notations in the RN's and NP and other defendant medical provider records indicating that Plaintiff was doing his own wound care and asking for help 'if needed' however, [sic] there is only 1-2 records of any medical provider actually providing any assistance with wound care." *Id.* at 12. The Defendants "merely documented the existing oozing wounds, new open wounds, failed skin grafts, and reopened wounds"; they did not take "any action to provide wound care, continuing to leave it to Plaintiff with inadequate supplies." *Id.*

Lashuay contends that, as a result of Defendants' "failure to provide medically necessary wound care and supplies," he suffered medical complications "most or all of which would not have occurred with professional wound care." *Id.* He further alleges that, as a result of his "continued and new wounds," necessary surgery and physical therapy was delayed and denied. *Id.* Specifically, Lashuay alleges that, on or around January 2015, the Hurley Hospital recommended that he undergo surgery. *Id.* at 14. Despite that recommendation, "[i]n January 2015, and continuing thereafter, Defendants denied Hurley's recommendation for surgeries." *Id.*

Lashuay now contends that he is "severely disabled in the use of his right hand and his range of motion in his neck and other body parts is severely restricted and he suffered extreme pain throughout his" incarceration "and continuing to the present." *Id.* at 12–13. He alleges that the "Hurley Burn Clinic professionals" have advised him that "it is too late for there to be any reasonable chance that the surgery would help." *Id.* at 13.

**B.**

Because their identities and roles are relevant to Lashuay's request for expedited discovery, the Defendants named in the amended complaint will be briefly identified. Aimee Delilne "was the first RN to see Plaintiff upon his arrival at DWH . . . and provided nursing care per records throughout his stay there." *Id.* at 2–3. FNU Trout "was the 'wound care nurse' at DWH who was notified of Plaintiff's arrival and reportedly evaluated Plaintiff upon arrival for necessary wound care services." *Id.* at 3. FNU Wetzel "was from physical therapy services at DWH and reportedly evaluated Plaintiff for physical therapy needs and prescribed or oversaw Plaintiff's physical therapy services while in custody of MDOC." *Id.* Gary Duncan "was one of the 4 providers involved in Plaintiff's transfer and intake into DWH and provided or supervised care on various occasions thereafter." *Id.* at 3–4. Mollie Klee, Lorraine Vanbergen, Timothy Zeigler, and Kimberly

Dunning-Meyers provided nursing care to Lashuay throughout his incarceration. *Id.* at 4–5. Tana Hill and Jennifer Wierman provided medical services to Lashuay and oversaw the nursing care and wound management efforts. *Id.* at 4, 7.

Dr. Keith Papendick, the "Regional Medical Director for Corizon Health and/or the MDOC," was responsible for "approving or denying specialty services, such as physical therapy, assistive or therapeutic devices, surgical consult and surgery" to MDOC patients. *Id.* at 5. Scott Weaver was responsible for "providing physical therapy services to inmate patients" at DWH. *Id.* at 6. Danielle Alford "saw Plaintiff upon admission to DWH and indicated in her care plan that Plaintiff would provide his own wound care." *Id.* at 6–7. Dr. Terence Whiteman saw Lashuay when initially incarcerated and "approved Plaintiff being required to provide his own wound care." *Id.* at 7. Lynn Larson "was involved in responding to Plaintiff's requests for recommended surgery and following upon on or noting the responses thereto by other Defendants." *Id.* at 8. Dr. Muhammad Rais "oversaw Plaintiff's care beginning 7/8/15 . . . until his release from MDOC custody." *Id.* William Borgerding "denied Plaintiff pain and burn care medications." *Id.* And Defendant Corizon Health, Inc., "employed or contracted with some or all of the individual medical providers named as Defendants." *Id.* at 9.

Finally, the amended complaint identifies two John Does. According to Lashuay, John Doe 1 "is the Chief Medical Officer for the MDOC . . . who is responsible for approving or denying corrective and reconstructive surgical procedures and for all other inmate medical services." *Id.* at 6. John Doe 2 is the Assistant Chief Medical Officer at DWH and "denied or failed to take adequate measures to provide Plaintiff with medically necessary surgery, pain management, wound care and physical therapy." *Id.* at 8–9.

**II.**

**A.**

Federal Rule of Civil Procedure 26(d)(1) provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation, or by court order." Lashuay seeks a court order authorizing early discovery. In reviewing such requests, courts typically impose a "good cause standard." 8A Charles Alan Wright and Arthur R. Miller, *1993 Discovery Moratorium Pending Discovery Plan*, Fed. Prac. & Proc. Juris. § 2046.1 (4d ed.). Neither party has identified controlling Sixth Circuit precedent. However, decisions within the circuit provide some guidance. In *In re Paradise Valley Holdings, Inc.*, the bankruptcy court explained that "'[g]ood cause may be found where the plaintiff's need for expedited discovery outweighs the possible prejudice or hardship to the defendant.'" No. 03-34704, 2005 WL 3841866, at *2 (Bankr. E.D. Tenn. Dec. 29, 2005) (quoting *Metal Bldg. Components, LP v. Caperton*, 2004 U.S. Dist. LEXIS 28854, at *10 (D.N.M. Apr. 2, 2004)). Further, "[g]ood cause is usually found in cases involving requests for injunctive relief, challenges to personal jurisdiction, class actions, and claims of infringement and unfair competition." *Id.* The *Paradise Valley Holdings* opinion also emphasizes that Rule 26(d) "'protects defendants from unwarily incriminating themselves before they have a chance to review the facts of the case and to retain counsel. This important protection maintains the fairness of civil litigation.'" *Id.* (quoting *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y.1982)). *See also USEC Inc. v. Everitt*, No. 3:09-CV-4, 2009 WL 152479, at *3 (E.D. Tenn. Jan. 22, 2009) (adopting the analysis in *Paradise Valley Holdings*); *Whitfield v. Hochsheid*, No. C-1-02-218, 2002 WL 1560267, at *1 (S.D. Ohio July 2, 2002) (imposing a good cause standard).

Other district courts have also identified certain relevant factors. In *Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, the district court specified four factors:

> (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.

202 F.R.D. 612, 613 (D. Ariz. 2001) (quoting *Notaro* and noting that *Notaro* borrowed the test for granting a preliminary injunction and applied it to a request for expedited discovery). Similarly, in *Meritain Health Inc. v. Express Scripts, Inc.*, the district court enumerated a different five factors that have relevance:

> (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.

No. 4:12-CV-266 CEJ, 2012 WL 1320147, at *2 (E.D. Mo. Apr. 17, 2012) (citing *Qwest Comm. Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D.Colo. 2003)).

**B.**

Lashuay's request for expedited discovery is focused solely on identifying the two John Does mentioned in his amended complaint. He asks that the Court permit him to "immediately take a F.R.Civ.P. 30(b)(6) deposition and issue subpoenas with short response times in order to identify the proper parties." Mot. Exp. Discovery at 3, ECF No. 6. Lashuay contends that "[n]either the named nor the as yet unnamed Defendants will be harmed by granting Plaintiff's request to proceed immediately with discovery for the limited purpose of identifying John Doe Defendants." *Id.* The motion identifies only one reason why the expedited discovery is necessary: "[t]he time for Plaintiff to identify and substitute actual parties for the John Does is running." *Id.* In his supplemental brief, Lashuay expands upon the perceived urgency of the request: "The matter is urgent since the Hurley Hospital recommendation was affirmed on 12/14/14, when Defendants sent him there for reevaluation. Subsequently, the need and recommendation for surgery is noted

repeatedly in Plaintiff's medical records, but there is no indication who was responsible for failing or electing not to follow those recommendations." Supp. Br. Exp. Disc. at 5, ECF No. 37.

The parties agree that the statute of limitations for 42 U.S.C. § 1983 causes of action is three years. *See* Def. Resp. Mot. Exp. Disc. at 2, ECF No. 30. And Lashuay appears to be arguing, in vague terms, that waiting until the typical discovery stage may prevent him from amending his complaint and identifying the two John Does. But Lashuay's cursory briefing on this issue does not suffice to carry his burden of justifying early discovery. According to his amended complaint, Lashuay was not released from MDOC custody until September 1, 2016. Am. Compl. at 10. His claims of mistreatment appear to span his entire term of incarceration. Thus, the statute of limitations time bar does not appear to be imminent.

True, Lashuay's claims regarding the two John Does appear to center on a recommendation for surgery which the Hurley Hospital made in December 2014. *Id.* at 14. But he also contends that "[i]n January 2015, *and continuing thereafter*, Defendants denied Hurley's recommendation for surgeries." *Id.* (emphasis added). Neither party has addressed whether, for statute of limitations purposes, the MDOC refusal to approve the surgeries should be construed separately from Lashuay's other allegations of mistreatment. Even if they are, Lashuay's complaint alleges that that refusal was ongoing. Thus, even focusing solely on the January 2015 surgery recommendation, the statute of limitations deadline does not appear to be looming.

In short, Lashuay has not carried his burden of demonstrating that there is good cause to depart from the established default timeline for discovery. Lashuay's concern regarding he statute of limitations is the only potentially irreparable injury he identifies. There is no motion for a preliminary injunction pending, no challenge to personal jurisdiction, no class action claims, and no allegations of infringement or unfair competition. Absent some indication that the statute of

limitations deadline is imminent, then, Lashuay has not identified good cause for expedited discovery. Lashuay's motion to commence limited discovery immediately will be denied without prejudice. If Lashuay can identify additional evidence which would satisfy the good cause standard, his request may be reconsidered.

### III.

Accordingly, it is **ORDERED** that Plaintiff Lashuay's motions for leave to commence limited discovery immediately, ECF Nos. 5, 6, are **DENIED without prejudice.**

It is further **ORDERED** that Plaintiff Lashuay's motion for leave to file a second amended complaint, ECF No. 39, is **SCHEDULED** for hearing on **February 28, 2018, at 4:00 p.m.**

It is further **ORDERED** that Defendants' motion to strike the improperly filed second amended complaint, ECF No. 40, is **GRANTED.**

It is further **ORDERED** that the improperly filed second amended complaint, ECF No. 35, is **STRICKEN.**

Dated: January 8, 2018              s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 8, 2018.

s/Kelly Winslow
KELLY WINSLOW, Case Manager