UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID LASHUAY,

                Plaintiff,                Case No. 17-cv-13581

v.                                            Honorable Thomas L. Ludington

AIMEE DELILNE, et al,

                Defendants.

_____/

**ORDER GRANTING IN PART MOTION FOR LEAVE TO FILE
SECOND AMENDED COMPLAINT AND DENYING MOTION TO DISMISS AS MOOT**

On November 1, 2017, Plaintiff David Lashuay filed a complaint against a variety of medical staff and medical providers alleging that they were deliberately indifferent to his medical needs while he was incarcerated by the Michigan Department of Corrections. ECF No. 1. On November 10, 2017, and before any Defendants were served, Lashuay filed an amended complaint which made minor factual clarifications and corrected several clerical errors. ECF No. 4. On the same day, Lashuay filed two ex parte motions for leave to commence limited discovery immediately. ECF Nos. 5, 6. Those motions have been denied without prejudice because Lashuay did not identify good cause for premature discovery. ECF No. 42.

On December 8, 2017, the served Defendants filed a motion to dismiss. ECF No. 26. Several weeks later, Lashuay attempted to file a second amended complaint addressing certain of the arguments Defendants make in their motion to dismiss. In their reply brief in support of their motion to dismiss, Defendants explain that, pursuant to Federal Rule of Civil Procedure 15, Lashuay was required to obtain leave of the Court before filing a second amended complaint. ECF No. 38. The next day, Lashuay filed a motion for leave to file an amended complaint. ECF No. 39.

In that motion, Lashuay admits that the second amended complaint was improperly filed. *Id.* at 3. Lashuay further indicated that, "[u]pon reviewing the Corizon Defendants' motion, Plaintiff determined that his gross negligence claims were not viable and further that he should have included a municipal liability claim against Defendant Corizon health." *Id.*[1] Lashuay seeks leave to file a second amended complaint to remedy those shortcomings. Defendants oppose the motion to amend, arguing that Lashuay has repeatedly failed to correct deficiencies in his pleadings and also that the amendment would be futile as to the allegations against Defendant Corizon. For the reasons provided below, Lashuay's motion to file an amended complaint will be granted in part. Because the second amended complaint will moot the arguments Defendants advance in their motion to dismiss, that motion will be denied as moot.

**I.**

The Court has previously summarized the allegations in the amended complaint. That summary will be reproduced here. Then the changes in the proposed second amended complaint will be identified.

**A.**

**1.**

Lashuay's first amended complaint alleges that, on July 9, 2014, Lashuay suffered third degree burns on 49% of his body because of an explosion in Otsego County, Michigan. Am. Compl. at 10, ECF No. 4. Lashuay was treated at the Hurley Hospital Burn Unit in Flint Michigan for many weeks. *Id.* On October 16, 2014, Lashuay was released from Hurley Hospital and into the custody of the Michigan Department of Corrections. *Id.* He remained in MDOC custody until September 1, 2016, when he was released on parole. *Id.*

---

[1] The incorrectly filed second amended complaint has been stricken. *See* ECF No. 42.

Lashuay's claims arise out of the MDOC's alleged deliberate indifference to his medical needs upon his release from Hurley Hospital. He contends that, when released into MDOC custody, "Hurley hospital recommended additional skin grafts and surgery to release contractures caused by the burns, with a re-visit at their Burn Unit in 2 weeks to evaluate for planned surgeries." *Id.* at 10–11.

According to Lashuay, MDOC medical personnel "assured the Hurley Hospital medical staff that all of Plaintiff's medical needs would be met," but failed to fulfill that promise. *Id.* at 11. Specifically, Lashuay contends that, "[u]pon arrival at [MDOC's Dwayne Waters Hospital (DWH)], Plaintiff had open wounds requiring daily dressing changes and application of medications." *Id.* Despite his condition, he was "placed in isolation for 30 days." *Id.* He alleges that, during his incarceration, he received "minimal or no wound care." *Id.* Rather, Lashuay was "required to attend to his daily wound-care needs, dressing changes and medication application with no or minimal assistance from healthcare staff." *Id.* He alleges that he was "frequently not provided with adequate supplies to change his wound dressing and had to resort to tearing up garbage bags to cover some of the open wounds." *Id.* at 11–12.

Lashuay alleges that "[t]here are numerous notations in the RN's and NP and other defendant medical provider records indicating that Plaintiff was doing his own wound care and asking for help 'if needed' however, [sic] there is only 1-2 records of any medical provider actually providing any assistance with wound care." *Id.* at 12. The Defendants "merely documented the existing oozing wounds, new open wounds, failed skin grafts, and reopened wounds"; they did not take "any action to provide wound care, continuing to leave it to Plaintiff with inadequate supplies." *Id.*

Lashuay contends that, as a result of Defendants' "failure to provide medically necessary wound care and supplies," he suffered medical complications "most or all of which would not have occurred with professional wound care." *Id.* He further alleges that, as a result of his "continued and new wounds," necessary surgery and physical therapy was delayed and denied. *Id.* Specifically, Lashuay alleges that, on or around January 2015, the Hurley Hospital recommended that he undergo surgery. *Id.* at 14. Despite that recommendation, "[i]n January 2015, and continuing thereafter, Defendants denied Hurley's recommendation for surgeries." *Id.*

Lashuay now contends that he is "severely disabled in the use of his right hand and his range of motion in his neck and other body parts is severely restricted and he suffered extreme pain throughout his" incarceration "and continuing to the present." *Id.* at 12–13. He alleges that the "Hurley Burn Clinic professionals" have advised him that "it is too late for there to be any reasonable chance that the surgery would help." *Id.* at 13.

**2.**

Because their identities and roles are relevant to Lashuay's request for expedited discovery, the Defendants named in the amended complaint will be briefly identified. Aimee Delilne "was the first RN to see Plaintiff upon his arrival at DWH . . . and provided nursing care per records throughout his stay there." *Id.* at 2–3. FNU Trout "was the 'wound care nurse' at DWH who was notified of Plaintiff's arrival and reportedly evaluated Plaintiff upon arrival for necessary wound care services." *Id.* at 3. FNU Wetzel "was from physical therapy services at DWH and reportedly evaluated Plaintiff for physical therapy needs and prescribed or oversaw Plaintiff's physical therapy services while in custody of MDOC." *Id.* Gary Duncan "was one of the 4 providers involved in Plaintiff's transfer and intake into DWH and provided or supervised care on various occasions thereafter." *Id.* at 3–4. Mollie Klee, Lorraine Vanbergen, Timothy Zeigler, and Kimberly

Dunning-Meyers provided nursing care to Lashuay throughout his incarceration. *Id.* at 4–5. Tana Hill and Jennifer Wierman provided medical services to Lashuay and oversaw the nursing care and wound management efforts. *Id.* at 4, 7.

Dr. Keith Papendick, the "Regional Medical Director for Corizon Health and/or the MDOC," was responsible for "approving or denying specialty services, such as physical therapy, assistive or therapeutic devices, surgical consult and surgery" to MDOC patients. *Id.* at 5. Scott Weaver was responsible for "providing physical therapy services to inmate patients" at DWH. *Id.* at 6. Danielle Alford "saw Plaintiff upon admission to DWH and indicated in her care plan that Plaintiff would provide his own wound care." *Id.* at 6–7. Dr. Terence Whiteman saw Lashuay when initially incarcerated and "approved Plaintiff being required to provide his own wound care." *Id.* at 7. Lynn Larson "was involved in responding to Plaintiff's requests for recommended surgery and following upon on or noting the responses thereto by other Defendants." *Id.* at 8. Dr. Muhammad Rais "oversaw Plaintiff's care beginning 7/8/15 . . . until his release from MDOC custody." *Id.* William Borgerding "denied Plaintiff pain and burn care medications." *Id.* And Defendant Corizon Health, Inc., "employed or contracted with some or all of the individual medical providers named as Defendants." *Id.* at 9.

Finally, the amended complaint identifies two John Does. According to Lashuay, John Doe 1 "is the Chief Medical Officer for the MDOC . . . who is responsible for approving or denying corrective and reconstructive surgical procedures and for all other inmate medical services." *Id.* at 6. John Doe 2 is the Assistant Chief Medical Officer at DWH and "denied or failed to take adequate measures to provide Plaintiff with medically necessary surgery, pain management, wound care and physical therapy." *Id.* at 8–9.

**B.**

The proposed second amended complaint names the same Defendants. It does, however, include two new paragraphs of factual allegations. The first addition relates to Hurley Hospital's initial release of Lashuay into MDOC's custody. Lashuay alleges: "Hurley Hospital's release of Plaintiff into MDOC custody at DWH was specifically conditioned on MDOC/Corizon's agreement to carry out the plan of treatment outlined by Hurley Hospital." Prop. Sec. Am. Compl. at 11, ECF No. 39, Ex. A. The second new allegation relates to the permanent consequences of the alleged deliberate indifference:

> Plaintiff was permanently harmed by the lack of medically necessary and adequate wound care including failed skin grafts, opening of new wounds, scarring, the development of cords, bands and contractures which restrict his movement, the inability to use compression garments which would have avoided same and preserved the option for contracture release surgery which would have restored Plaintiff's range of motion.

*Id.* at 13.

The proposed second amended complaint does not change the allegations in Count One. That Count is identical to the Count One charged in the first amended complaint. Count Two of the second amended complaint substitutes the "gross negligence" claim of the first amended complaint for a "municipal liability" claim against Defendant Corizon Health. In the new Count Two, Lashuay alleges that "Defendant Corizon maintained policies, patterns and practices which were deliberately indifferent to the constitutional right of inmates and Plaintiff in particular to receive reasonably adequate medical care while in custody of the MDOC." *Id.* at 20. Lashuay provides four examples:

> With regard to Plaintiff, these policies, procedures and practices were manifested by, including but not limited to:
>
> a. Failing to provide the medically necessary additional surgeries to re-do failed skin grafts and carry out contracture release to Plaintiff's neck, shoulders, arms and hands, causing permanent disfigurement and disabling loss of movement.

    b. Failing to provide adequate and medically necessary wound care, leaving all wound care to the Plaintiff who had limited ability and was provided insufficient and medically inappropriate supplies for self-care and ultimately rendered Plaintiff ineligible for surgeries which otherwise would have restored his range of motion, use of extremities and avoidance or minimization of scarring and related disabilities

    c. Denial of medically necessary PT.

    d. Denial of medically necessary pain management after his transfer from DWH to MDOC Parnall.

*Id.* at 22.

## II.

Federal Rule of Civil Procedure 15(a)(2) provides that a party may amend its pleading with the court's leave and that "the court should freely give leave when justice so requires." Denial of a motion to amend is appropriate, however, "'where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'" *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

An amendment would be futile if the proposed amended complaint does not state a claim upon which relief can be based. A pleading fails to state a claim under Rule 12(b)(6) if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment]

to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678-79 (quotations and citation omitted).

## III.

Defendants oppose Lashuay's requested amendment for two reasons. First, Defendants argue that Lashuay has violated Federal Rule of Civil Procedure 11 by previously asserting claims which were not viable. Defendants appear to argue both that Lashuay should be sanctioned for filing those claims and also that he should be denied leave to amend because of his repeated failure to cure deficiencies. Second, Defendants argue that the amendment would be futile as to Defendant Corizon because the allegations against the company are conclusory. Each argument will be considered in turn.

## A.

Defendants first argue that Lashay should be sanctioned for advancing demonstrably nonmeritorious claims. Federal Rule of Civil Procedure 11(b) requires attorneys who file a document with the Court to certify "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

   (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

   (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

*Id.*

If an attorney violates Rule 11(b), "after notice and a reasonable opportunity to respond, . . . the Court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for its violation." *Id.* at Rule 11(c)(1). "[T]he test for imposition of Rule 11 sanctions is whether the attorney's conduct was reasonable under the circumstances." *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997). "A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Rule 11(c)(4). District courts have broad discretion in determining whether sanctions are warranted. *Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 958 (6th Cir. 1990).

Defendants fault Lashuay for filing two complaints—the original complaint and the first amended complaint—which contained claims Lashuay now admits were not viable. *See* Mot. Am. Compl. at 3 ("Upon reviewing Corizon Defendants' Motion, Plaintiff determined that his gross negligence claims were not viable and further that he should have included a municipal liability claim against Defendant Corizon Health."). But the grounds for Defendants' opposition to those claims became apparent only after Defendants filed their motion to dismiss. In other words, Lashuay did not seek to advance manifestly nonmeritorious claims even after Defendants had indicated why they were nonviable. To the contrary, upon receiving notice of the defects in his first amended complaint, Lashuay immediately attempted to file a second amended complaint which corrected those shortcomings.

These kinds of amendments are not only anticipated but encouraged by the Federal Rules. Federal Rule of Civil Procedure 15(a)(1)(B) authorizes a party to amend its pleading once as a matter of course in response to a motion to dismiss by the defendant (assuming the complaint has not already been amended). This Rule contemplates the common scenario where a plaintiff realizes defects in his claims only after a motion to dismiss is filed. The mere fact that a plaintiff attempted to advance nonmeritorious claims does not warrant Rule 11 sanctions (or denial of leave to amend).

Perhaps Defendants believe that Lashuay should have known that the claims advanced in its original and first amended complaints were nonmeritorious. But there is no evidence that the claims were advanced in bad faith, and the Court declines to sanction Lashuay for simply advancing nonmeritorious claims in the absence of additional evidence of culpability.

**B.**

Defendants further argue that Lashuay's proposed second amended complaint would be futile "because the allegations against Corizon are conclusory." Def. Resp. Mot. Amend at 3. Lasuhay has declined to respond to Defendants' futility argument.

"A plaintiff raising a municipal liability claim under § 1983 must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer,* 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)).

> A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Id.*

Lashuay's *Monell* claim is cognizable only if he can demonstrate that Corizon was on notice that its policies would cause its employees to repeatedly violate prisoner rights. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program.").

Lashuay has identified several alleged Corizon policies, but has not adequately alleged that those policies inevitably lead to constitutional violations. In fact, Lashuay has not even alleged that Corizon's policies were directly responsible for his injuries. A review of the alleged policies reveals their shortcomings. *See* Prop. Sec. Am. Compl. at 21. Lashuay accuses Corizon of "[d]enying or delaying access to timely and reasonably adequate medical care" or qualified "medical professionals." *Id.* He alleges that Corizon "interfer[ed] with medical judgment based on factors unrelated to prisoners' medical needs" by prioritizing inexpensive care and refusing to transfer inmates to better medical facilities. *Id.* Lashuay also criticizes Corizon for disregarding "medical orders by qualified medical professionals" and "[s]ubstituting the judgment of its own and MDOC's unqualified medical providers." *Id.*

These allegations can be summarized as follows: Lashuay faults the Defendants for refusing to provide medical care at the level recommended by outside specialists which Lashuay was periodically treated by. For example, Lashuay alleges that the "Hurley hospital recommended additional skin grafts and surgery" when it released him to MDOC, but Lashuay was "required to attend to his daily wound-care needs, dressing changes, and medication application" himself, which resulted in "new open wounds, failed skin grafts, and reopened wounds." *Id.* at 11–12.

Defendants then cited the existence of the "continued and new wounds" as the reason to "delay and deny necessary surgery and physical therapy." *Id.* at 13.

Lashuay alleges that the Hurley Hospital "ordered" that he undergo physical therapy seven times a week, but Defendants started him at three times a week. *Id.* at 14. Later, Defendants reduced the physical therapy to twice a week and eventually stopped it all together. *Id.* at 17. Lashuay further alleges that the physical therapy provided was incomplete because Defendant Weaver "did not want to come in contact with Plaintiff's open, oozing, bleeding and inadequately dressed wounds." *Id.* at 14.

When the Hurley Hospital reexamined Lashay, it concluded that surgery was necessary to address the failed skin grafts and skin contractures, but "Defendants denied Hurley's recommendation for surgeries, based on the cost to the MDOC of these surgeries and the minimum 30-day hospital stay that would be required." *Id.* at 15. Lashuey alleges that Defendants contacted several other providers in an attempt to "obtain surgical consults," but those providers "refused to even see Plaintiff for consult." *Id.* at 16. Lashuay thus alleges that he was denied medically necessary surgery because of cost. Lashuay additionally faults Defendants for cutting "off all his pain medications 'cold turkey.'" *Id.* at 17.

**1.**

These allegations fail to state a municipal liability claim against Corizon for two reasons. First, the large majority of these allegations simply involve disputes over the adequacy of Lashuay's treatment. Hurley Hospital recommended physical therapy seven times a week as well as additional surgery. But the Defendants concluded that surgery was unnecessary, that physical therapy three times a week was sufficient, and that Lashuay could adequately provide wound care to himself. "[C]ourts are generally reluctant to second guess the medical judgment of prison

medical officials." *Jones v. Muskegon Cty.*, 625 F.3d 935, 944 (6th Cir. 2010). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). And, likewise, "[a]llegations of medical malpractice are not sufficient to establish a Constitutional violation." *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). *See also Bertl v. City of Westland*, No. 07-2547, 2009 WL 247907, at *5 (6th Cir. Feb. 2, 2009) ("[A] prison doctor who provides careless or ineffective treatment merely displays incompetence, not unconstitutional deliberate indifference.").

Lashuay's allegations regarding the limitations on physical therapy, denial of pain medication, and inadequate wound care simply highlight allegedly inadequate medical treatment. Hurley Hospital recommended a certain level of treatment, but Defendants provided something less. Accepting these allegations as true, Lashuay received less than optimal healthcare, but more must be alleged to demonstrate that the inadequate healthcare was *unconstitutional*.

Nevertheless, some of Lahuay's allegations likely suffice to state a claim against individual Defendants. In particular, Lashuay alleges that Hurley Hospital recommended surgery to correct the failed skin grafts and release skin contractures, but Defendants refused to provide any surgery at all. Lashuay does allege that surgery was merely "recommended," but Defendants' failure to provide any surgery suggests that these allegations may involve more than just a dispute over the adequacy of care.

**2.**

However, even if some of Lashuay's allegations amount to constitutionally inadequate treatment, Lashuay has not identified a Corizon policy which is "'the functional equivalent of a

- 13 -

decision by the [entity] itself to violate the Constitution.'" *Connick*, 563 U.S. at 61 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 395 (1989)) (O'Connor, J., concurring in part and dissenting in part). Rather, all of the allegedly inadequate medical care and resulting injuries was the result of decisions made by individual Defendants. For example, Lashuay does not allege a Corizon policy forbidding medical personnel from providing wound care for inmates. Rather, the individual Defendants simply concluded that Lashuay could provide adequate care for himself. The same could be said of the decision to limit Lashuay's physical therapy or deny access to pain medication. Regardless of whether those decisions were unconstitutional, Lahuay has not alleged that they were made pursuant to an official policy.

Once again, the closest that Lashuay comes to identifying an official policy is the allegation that he was denied surgery because surgery would be too expensive. *See* Prop. Sec. Am. Compl. at 15–17. But Lashuay does not allege that Corizon has a policy against providing medically necessary surgeries. To the contrary, he alleges that Corizon actually explored the possibility of surgery with several alternative providers. *Id.* at 16. Construing all allegations in a light most favorable to Lashuay, he has simply alleged that Corizon's policy regarding surgeries provided its employees discretion in determining whether it is necessary. Policies of that nature are insufficient to establish municipal liability absent, at the very least, "[a] pattern of similar constitutional violations by untrained employees." *See Connick*, 563 U.S. at 62; *Maxwell v. Corr. Med. Servs., Inc.*, 538 F. App'x 682, 692 (6th Cir. 2013) (holding that the proposed amended complaint did not state a municipal liability claim because "the policy referenced by Appellant allowed employees to exercise discretion" regarding whether to deny surgery).

Thus, the alleged policies and injuries which Lashuay cites as the basis for his *Monell* claim against Corizon simply involve disputes over the adequacy of the medical treatment he received.

To the extent any of the allegations rise above that level, they do not identify official policies. Rather, he simply relies upon decisions by individual Defendants with which he disagrees. None of those decisions were the result of mandatory policies by Corizon. At most, Corizon disfavored the medical treatment Lashuay was seeking, but gave medical providers discretion in determining what treatment was necessary. As discussed above, more is necessary to state a claim for municipal liability. Lashuay has not identified a Corizon policy which is "'the functional equivalent of a decision by the [entity] itself to violate the Constitution'" and so allowing amendment to assert Count II would be futile. *Connick*, 563 U.S. at 61 (quoting *Harris*, 489 U.S. at 395 (1989)).

Because the proposed second amended complaint corrects several shortcomings in the first amended complaint, Lashuay's motion for leave to amend will be granted in part. He will be directed to file a second amended complaint which incorporates the new factual allegations reflected in the proposed second amended complaint. However, because Count II in the proposed second amended complaint does not state a claim against Defendant Corizon, Lashuay will not be granted leave to amend to include that claim. Rather, the second amended complaint should only include Count I and should not name Corizon as a Defendant. Because those changes will moot Defendants' pending motion to dismiss, that motion will be denied.

**IV.**

Accordingly, it is **ORDERED** that Plaintiff Lashuay's motion for leave to file a second amended complaint, ECF No. 39, is **GRANTED in part.**

It is further **ORDERED** that Plaintiff Lashuay is **DIRECTED** to file a second amended complaint in accordance with this Opinion and Order **on or before April 27, 2018.**

It is further **ORDERED** that Defendants' motion to dismiss the first amended complaint, ECF No. 26, is **DENIED as moot.**

Dated: April 11, 2018  s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 11, 2018.

s/Kelly Winslow
KELLY WINSLOW, Case Manager